UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| HARMONIE HAGERMAN and | ) | |
| CARLTON TROTT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 08-CV-413-B-W |
| | ) | |
| W.E. AUBUCHON CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDED DECISION ON MOTION TO DISMISS**
**AND**
**ORDER ON MOTION TO CONVERT TO SUMMARY JUDGMENT**

Plaintiffs Harmonie Hagerman and Carlton Trott, a married couple, have sued

Hagerman's former employer, Defendant W.E. Aubuchon Co., Inc., alleging that Aubuchon

violated legal duties owed to Hagerman in relation to sexual discrimination in the workplace.  On

February 13, 2009, Aubuchon filed a motion to dismiss supplemental state law tort claims

advanced by Hagerman and Trott, on the ground that they fail to state a claim for which relief

may be granted.  Upon completion of the briefing schedule, the Court referred the dispositive

motion to me for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).  I

recommend that the Court grant, in part, the motion.

**Material Allegations**

The proposed amended complaint[1] contains the following allegations material to the

challenged tort claims.  Harmonie Hagerman and Carlton Trott are married and live together in

---

[1]     Plaintiffs moved to amend subsequent to the briefing cycle on the Motion to Dismiss.  I have utilized the amended pleadings to describe the Plaintiffs' allegations.  Paragraphs 77 and 78 of the proposed amended complaint

Randolph, Maine.  They have two minor children who also live with them.  (Proposed Am. Compl. ¶¶ 1-2, Doc. 19-2.)  Harmonie Hagerman worked for W.E. Aubuchon in its hardware store located on Bangor Street, in Augusta, Maine, from October 26, 2006, to January 26, 2007.  (Id. ¶¶ 6, 8.)  On December 8, 2006, Jacob Foster, an assistant store manager, sexually assaulted Hagerman while the two were closing down the store one evening and while the two were the only staff present in the store.  (Id. ¶¶ 11, 30.)  The allegations are that:

> Jake Foster . . . grabbed and squeezed [her] breast with his hand and squeezed and twisted her nipple between his thumb and forefinger, inflicting pain on Ms. Hagerman.  . . . .  Ms. Hagerman immediately turned away in an effort to escape her Supervisor's grasp, when he slapped and grabbed her buttocks.

(Id. ¶ 30.)  Hagerman left the store and told her husband, Carlton Trott, what happened.  (Id. ¶ 32.)  Trott went to the store the next day and confronted Foster, who apologized.  (Id. ¶ 33.)  Hagerman told a co-worker about the incident.  (Id. ¶ 40.)  She also told the store manager, Aaron Feldmus, upon his return to the store following an absence of a few days.  (Id. ¶ 43.)  Feldmus told Hagerman that she would be scheduled to work under his supervision, but might be scheduled to work shifts overlapping with Foster.  (Id. ¶ 50.)  He asked her what she wanted him to do and she told him "that Foster's behavior had to stop."  (Id. ¶ 49.)

According to Hagerman and Trott:

> At work following the assault, Ms. Hagerman was barraged daily with comments from co-workers and customers criticiz[ing] her for telling her husband about the assault, and for making a complaint to Management against the Assistant Manager.  She was also shunned and ostracized by her employer, by its employees and by customers of the Defendant and by other third parties both known and unknown for said complaint.  Her husband, Plaintiff Trott, started dropping by the store for her protection.

---

are, in my view, simply legal conclusions and do not impact my decision.  Paragraphs 48 and 88 likewise have no impact on this recommended decision.  Paragraphs 62 and 115 do impact my recommendation regarding the claim of false light publicity.  In the event the motion to amend is opposed and the court does not grant it, the recommendation regarding false light publicity would have to be reconsidered.

(<u>Id.</u> ¶ 48.)  This allegation is supplemented later in the proposed amended complaint as follows:

> Moreover, when she returned to work after having reported Foster's behaviors to management, other employees, certain customers and third parties exhibited hostility to her, not speaking to her, because Aubuchon, through the Store Manager and Assistant Store Manager, had conveyed to Aubuchon's employees, certain customers and third persons, that Ms. Hagerman was somehow to blame for the harassment and assault and for provoking the assault.

(<u>Id.</u> ¶ 62.)

> One male employee went so far as to tell her that when he was working at the Kennebec Journal, he and his friends and co-workers got a woman fired for making a sexual harassment complaint against him.  An employee also told Ms. Hagerman, "You shouldn't have fuckin' told your husband."  This placed more fear into Ms. Hagerman that her employer was taking the side of her attacker, and was hostile to her continued employment.

(<u>Id.</u> ¶ 63.)

On January 2, 2007, Aubuchon sent a regional manager, Marcus Moran, to the store to meet with Hagerman.  Moran attempted, without success, to have Hagerman sign "a document that would give up all of her rights to  which . . . [she] was entitled."  (<u>Id.</u> ¶ 53.)  He also represented that Foster would be fired and that she would never have to work with him again. (<u>Id.</u> ¶ 54.)  However, Foster continued to work at the store for a period of months and separated from employment voluntarily in May 2007.  (<u>Id.</u> ¶¶ 56, 58, 75.)  Hagerman was made to change shifts rather than Foster.  (<u>Id.</u> ¶ 88.)  Hagerman alleges constructive discharge as of January 26, 2007.  (<u>Id.</u> ¶¶ 6, 64, 74, 90.)

Hagerman filed a charge of discrimination with the United States Equal Employment Opportunity Commission and the Maine Human Rights Commission.  (<u>Id.</u> ¶ 70.)  Aubuchon portrayed Hagerman to the Commissions as having provoked Foster's sexual assault and denied that Foster had any supervisory authority over Hagerman.  (<u>Id.</u> ¶¶ 71, 73, 82.)  Aubuchon also

falsely reported to the Commissions that Foster was suspended without pay and required to attend sexual harassment training.  (Id. ¶ 89.)

Hagerman and Trott allege that Hagerman was "highly traumatized ('paralyzed emotionally') for several weeks following the assault" and required counseling, frequent clinical interventions, phone contact by psychological counselors, medications, and medical office visits."  (Id. ¶¶ 80-81.)  They further allege that they and their youngest daughter, "were further traumatized by the fact that Ms. Hagerman had to discontinue breast-feeding their baby because of the medication Ms. Hagerman was forced to take because of the Defendant's conduct."  (Id. ¶ 81.)  They also allege, by way of the proposed amended complaint, that Aubuchon published false information concerning Hagerman's morality to its employees, customers, and diverse third persons.  (Id. ¶ 115).

Based on these factual allegations, Hagerman and Trott assert that they *both* have viable claims for assault and battery (count I);  for violation of their privacy rights (count V);  for intentional infliction of emotional distress (count VI);  and for "reckless" infliction of emotional distress (count VII).  In addition, Trott asserts a claim for loss of consortium (count VIII).

## Order to Supplement

On April 15, 2009, I ordered the parties to supplement the briefing to address whether the exclusivity provision of the Maine Workers' Compensation Act bars the tort claims in this case.  (Order to Supplement, Doc. 15.)  The parties have indicated a preference to address this matter in the context of summary judgment at a later date, which is one acceptable way to proceed.  I make no recommendation at this time concerning the exclusivity of workers' compensation remedies.  I

4

also dismiss as moot the Plaintiffs' motion to convert the supplemental briefing into a motion for summary judgment.[2]

### Discussion

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint can be dismissed for "failure to state a claim upon which relief can be granted." When deciding a motion to dismiss, the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences . . . in the plaintiff's favor, and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." TAG/ICIB Servs., Inc. v. Pan Am. Grain Co., Inc., 215 F.3d 172, 175 (1st Cir. 2000).

In its motion to dismiss, Aubuchon maintains that none of the Plaintiffs' tort claims (counts I, V, VI, VII and VIII) is viable. (Mot. to Dismiss at 1, Doc. 4.) Aubuchon's motion does not address the employment claims. I address each tort claim in turn.

### A.     Assault and Battery (Count I)

Aubuchon argues that the claim for assault and battery cannot be maintained against it because the allegations do not reasonably generate the inference needed to impose vicarious liability. (Mot. at 4.) In order for an employer to be held liable for the tortious conduct of its employee, its employee must have engaged in the tortious conduct within the scope of his employment. Nichols v. Land Transp. Corp., 223 F.3d 21, 22 (1st Cir. 2000). To determine whether an act was performed within the scope of employment, Maine law follows the tests specified in the Restatement (Second) of Agency:

---

[2]      In my experience this issue has often been addressed in the context of a motion to dismiss as most often it involves documentary evidence about which there can be no reasonable dispute. I was simply looking for a quick and clean way to address this issue. Obviously in the context of this case, that goal was illusory.

(1)  Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2)  Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228.  If the act falls outside the scope of employment,

additional factors are considered.

(2)  A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

(a) the master intended the conduct or the consequences, or

(b) the master was negligent or reckless, or

(c) the conduct violated a non-delegable duty of the master, or

(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

Id. § 219(2).  In cases such as this, application of the foregoing tests turns on the question of

whether the conduct was actuated by a purpose to serve the employer.  Nichols, 223 F.3d at 23.

"[S]erious intentional wrongdoing" is clearly outside the scope of employment.  Mahar v.

StoneWood Transp., 2003 ME 63, ¶ 14, 823 A.2d 540, 544.  The fact that the employment

relationship brought the perpetrator into the victim's proximity is not sufficient, in itself, to

justify an imposition of liability on the employer, unless the employer had reason to anticipate

the unlawful conduct in question.  Harrison v. Corr. Med. Servs., No. 02-104-P-H, 2003 U.S.

6

Dist. Lexis 9223, *1-2 (D. Me. May 30, 2003).  The material allegation in this case describes a serious intentional wrongdoing having no relation whatsoever to any purpose or objective associated with Aubuchon's interest.  The alleged sexual assault "clearly demonstrated [Foster's] motivation to serve his personal interests, rather than those of [Aubuchon]."  Mahar, 2003 ME 63, ¶ 16, 823 A.2d at 545.  Liability under Restatement section 228 is therefore beyond the realm of plausibility.  Moreover, the proposed amended complaint fails to allege facts demonstrating that the employer had reason to anticipate that Foster would assault Hagerman or that Hagerman had any reason to believe that Foster had actual or apparent authority to assault her on behalf of Aubuchon.  The absence of such allegations also rules out liability under Restatement section 219.

Hagerman and Trott concede that "there is no allegation that the assault . . . was within the scope of the Assistant Store Manager's employment," (Opposition at 10, Doc. 13), but they argue that the Supreme Court's decision in Burlington Industries v. Ellerth, 524 U.S. 742 (1998),[3] guides this question of Maine law because Aubuchon breached a duty to provide a workplace free of sexual harassment and a duty to train its staff about the unlawfulness of sexual harassment, and because Foster's conduct violated Aubuchon's "non-delegable" duties.  (Id. at 11-13.)  In Ellerth, the Supreme Court observed that "[t]he general rule is that sexual harassment by a supervisor is not conduct within the scope of employment," 524 U.S. at 757, a legal conclusion wholly consistent with the Maine law I have outlined above.  The Court went on to consider whether the defendant could be liable despite the fact that the conduct was beyond the scope of employment, listing the Restatement section 219 factors.  Id. at 758.  The Plaintiffs' assertion that Foster violated a "non-delegable duty of the master" is plainly inconsistent with the

---

[3]    The Plaintiffs incorrectly cite Ellerth v. Burlington Industries, 524 U.S. 951 (1998).

rationale of <u>Ellerth</u>.  There, the Court observed that an employee's engagement in sexual harassment does not violate a "non-delegable" duty.  524 U.S. at 758.  It also rejected the notion that such a scenario involves an issue of "apparent authority."  <u>Id.</u> at 759-60.  However, the Court held that employer negligence or inaction can support an imposition of vicarious liability if the employer "knew or should have known about the conduct and failed to stop it."  <u>Id.</u> at 759.  The proposed amended complaint does not present any allegations suggesting a basis for Aubuchon to have anticipated that Foster would assault Hagerman.  Finally, the Court considered "the Restatement's aided in the agency relation rule," section 219(d).  <u>Id.</u> at 760.  Under this rule, the Court reasoned that a supervisor is aided by the employment relationship when the misconduct consists of an exercise of supervisory authority to impose an adverse employment action on the supervisee.  <u>Id.</u> at 761.  From that premise, the Court continued to discuss vicarious liability within the context of a supervisor-created or condoned hostile work environment rather than an assault.  <u>Ellerth</u> does not aid the Plaintiffs because it supports the legal conclusion that Foster's conduct was outside the scope of employment and otherwise discusses a special scenario falling within Restatement section 219(d) that is readily distinguishable from an act of assault.[4]

The Plaintiffs[5] fail to state a claim of assault against Aubuchon.

## B.      Invasion of Privacy (Count V)

Aubuchon argues that the claim for invasion of privacy cannot be maintained because the proposed allegations fail to divulge any intrusion upon the Plaintiffs' solitude or any false light publication.  (Mot. at 5-6.)  The invasion of privacy tort protects four interests.  The tort exists

---

[4]      This case would likely be different if Foster had been scheduled to work alone with Hagerman on a subsequent occasion and had committed a second assault against her.  However, there are no allegations of any further assaultive behavior by Foster in the workplace.  Harassment and a hostile work environment post-assault may be the basis for liability against Aubuchon as to the employment discrimination claims, but not assault.

[5]      Carlton Trott's claim of assault would also fail because his wife was the person assaulted, not him.

where the defendant's conduct (1) intrudes upon the plaintiffs' physical and mental solitude or

seclusion, (2) publicly discloses private facts concerning the plaintiffs, (3) places the plaintiffs in

a false light in the public eye, or (4) appropriates the plaintiffs' names and/or likenesses for the

defendant's benefit.  <u>Loe v. Thomaston</u>, 600 A.2d 1090, 1093 (Me. 1991).  The Plaintiffs assert

that they have adequately alleged a claim involving both intrusion upon their solitude and false

light publicity.  (Opposition at 16.)  The material allegations read as follows:

> 17. After Harmonie Hagerman filed her charge in the Maine Human Rights
> Commission and the United States Equal Employment Opportunity Commission,
> Aubuchon continued a course of harassment against her by lying against,
> defaming, disparaging, besmirching and slandering Ms. Hagerman and her
> character by falsely and repeatedly saying that she had somehow provoked the
> harassment, assault and battery and other illegal conduct by her Supervisor, and
> Aubuchon's Store Manger, Mr. Foster.

> 18. Defendant Aubuchon, with malice aforethought, lied repeatedly to the Maine
> Human Rights Commission and EEOC Investigator, in illegally trying to shift
> blame against Ms. Hagerman and besmirching her good name and character, in
> retaliation for her reporting the criminal conduct of Jacob Foster to Defendant
> Aubuchon, all in violation of 42 U.S.C. 2000e-2 and 2000e-3.

> * * * *

> 62. Moreover, when she returned to work after having reported Foster's behaviors
> to management, other employees, certain customers and third parties exhibited
> hostility to her, not speaking to her, because Aubuchon, through the Store
> Manager and Assistant Store Manager, had conveyed to Aubuchon's employees,
> certain customers and third persons, that Ms. Hagerman was somehow to blame
> for the harassment and assault and for provoking the assault.

> * * * *

> 71. The highest level of Defendant's management, and the Assistant Manager who
> had assaulted Ms. Hagerman, commenced a course of conduct maliciously
> designed to blame and slander Ms. Hagerman by falsely alleging that she
> provoked his sexual assault and battery against her.

> * * * *

82. Although the Assistant Manager for Aubuchon admitted touching Ms. Hagerman's breast and apologized several times for his actions, Defendant Aubuchon claimed to the Maine Human Rights Investigator that its management concluded, and behaved as if, it was Ms. Hagerman who was at fault, because she was "flirtatious" and even because "as with most women her boobs are very noticeable when cold."  The Maine Human Rights Commission found this attempt at a defense or excuse "striking."

****
115.  By its conduct in lying about the morality of Ms. Hagerman's good character to employees, to customers and diverse third persons, both known and unknown, Defendant Aubuchon publicly placed Ms. Hagerman in a false light which would be highly offensive to Plaintiffs, herein.

These allegations describe false statements about Hagerman's character that were allegedly made to the Commission's investigator in connection with an investigation of Hagerman's human rights charge and to a group of store-affiliated personnel and patrons.   Additionally, the proposed amended paragraph 115 broadens the base of those to whom the statements were made to include not only store customers, but also "diverse third persons."

The Plaintiffs' claim of intrusion upon their marital seclusion fails to state a viable claim. This claim requires intrusion into, or invasion of, a secluded or private domain, Nelson v. Maine Times, 373 A.2d 1221, 1223 (Me. 1977), and the allegations do not reveal any such conduct.

The claim of false light publicity also would fail to state a viable claim, if the allegations were limited to the statements made to the Maine Human Rights Commission and a narrow group of individuals at the store.  In order for a claim of false light publicity to be actionable, the offensive communication must be "made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  Cole v. Chandler, 2000 ME 104, ¶ 17, 752 A.2d 1189, 1197 (quoting Restatement (Second) of Torts § 652D cmt. a (1977)).  Aubuchon argues that the Plaintiffs' allegations are insufficient because they do not reflect "publicity," as required by Maine law.

(Mot. at 6.)  Aubuchon cites authority supporting a finding that a false and disparaging communication made to an investigative body does not constitute publicity.  (Id., citing Moore v. The Big Picture Co., 828 F.2d 270, 273-75 (5th Cir. 1987) (collecting cases requiring "widespread dissemination" to the public at large and rejecting a claim based on the spreading of information from person to person by word of mouth);  Frye v. IBP, Inc., 15 F. Supp. 2d 1032, 1043-44 (D. Kan. 1998) (collecting cases requiring "widespread disclosure" and finding that statements made in an unemployment hearing were not "widely publicized").)  This authority is entirely consistent with Maine law.  Stokes v. Barnhart, 257 F. Supp. 2d 288, 295-96 (D. Me. 2003) ("Communication of private facts to only one person, or even to a group of six, is insufficient publication for purposes of this tort.  It is the defendant's own disclosure, not the fact that the individual to whom the defendant made the disclosure may later make it to others, that is determinative.") (citation omitted) (Mag. J. Rec. Dec., adopted by Dist. Ct.).  The Plaintiffs' proposed amended complaint, however, reasonably invites an inference that the disparaging remarks were substantially certain to become public knowledge because it is alleged that the remarks were made to diverse members of the public.  Consequently, this claim survives the motion to dismiss, to the extent that it is asserted by Hagerman.  Trott, however, fails to state a claim of false light publicity because the statements in question did not cast him in a false light.

## C.       Intentional Infliction of Emotional Distress (Count VI) and Reckless Infliction of Emotional Distress (Count VII)

Aubuchon argues that the claim for intentional infliction of emotional distress (IIED) cannot be maintained because the claim, as alleged, is exclusively based on statements made during proceedings before the Maine Human Rights Commission and, therefore, immunity applies.  (Mot. at 6-7.)  However, the allegations in support of Count VI and VII incorporate all

of the preceding allegations in the proposed amended complaint, not merely the allegations about Aubuchon's statements to the Commission.  (Proposed Am. Compl. at 18, ¶¶ 118-121.)

This Court has found that Maine law affords absolute immunity to witnesses in quasi-judicial proceedings for relevant communications made during the proceedings.  Rohrbach v. Charbonneau, No. 99-282-P-C, 2000 U.S. Dist. Lexis 2778, *18-23, 2000 WL 760739, *7 (D. Me. Mar. 1, 2000) (Carter, J., Mem. of Dec. and Order) (analyzing the issue at length and concluding based on the available, persuasive Maine precedent and the relevant sections and commentary of the Restatement (Second) of Torts §§ 585, 588, "that the Maine Law Court . . . would hold that witnesses at quasi-judicial proceedings enjoy the same absolute immunity as witnesses in judicial proceedings").  This Court has also found that the Maine Human Rights Commission's probable cause determination is quasi-judicial in nature and that civil immunity applies to relevant statements made by counsel in such proceedings.  LaPlante v. United Parcel Serv., 810 F. Supp. 19, 20-21 & n.4 (D. Me. 1993) ("Just as in a judicial proceeding, it is important that parties, witnesses and lawyers be free to speak forthrightly in litigating their case before the Commission and not fear collateral consequences of other lawsuits.").  However, the allegations in this case relate to statements made by a witness to the investigator rather than by a lawyer to the Commission, whereas LaPlante involved statements made directly to the Commission by a lawyer in response to the investigator's report.  810 F. Supp. at 21. Additionally, this Court has held that a party may not enjoy immunity for statements offered as a witness unless the testimony is offered in a quasi-judicial proceeding and the testimony is sworn. Rohrbach, 2000 U.S. Dist. Lexis 2778 at *26-28, 2000 WL 760739 at *8.  The proposed amended complaint alleges that the disparaging remarks were made by Aubuchon's chosen representative to an investigator rather than the Commission and there is no suggestion that the

12

statements were sworn.  Finally, Hagerman and Trott allege that the same statements were made

to a group of workers, customers, and diverse members of the public.  These allegations prevent

application of immunity in the context of a motion to dismiss.

Aubuchon otherwise argues that only Hagerman may maintain any emotional distress

claim that survives, not Trott.  The Plaintiffs argue that the disparagement of Hagerman's

character subsequent to a sexual assault could reasonably result in severe emotional distress on

the part of her husband, Trott.  Whether Trott can maintain a claim in his own name depends on

the existence of a duty running from Aubuchon to Trott.  The relevant duty is to refrain from

engaging in conduct that is so extreme and outrageous as to exceed all possible bounds of

decency.  Curtis v. Porter, 2001 ME 158, ¶ 10, 784 A.2d 18, 22-23; cf. Gammon v. Osteopathic

Hosp. of Me., Inc., 534 A.2d 1282, 1285 (Me. 1987) ("A defendant is bound to foresee psychic

harm only when such harm reasonably could be expected to befall the ordinarily sensitive

person.") (involving a claim of negligent infliction of emotional distress).  Aubuchon has not

argued at this juncture that the conduct alleged is not sufficiently outrageous to support an award

and has not offered any analysis of the issue of duty, whether owed to Hagerman or to Trott,

under these particular circumstances.  I therefore offer no recommendation as to the viability of

this claim for either Hagerman or Trott other than the foregoing recommendation related to the

application of the immunity doctrine.

**D.    Loss of Consortium (Count VIII)**

Aubuchon argues that Hagerman's husband, Carlton Trott, does not have a loss of

consortium claim because none of Hagerman's underlying tort claims is actionable.  (Mot. at 7.)

Should any tort claim survive, Aubuchon argues, alternatively, that Trott only has a claim for

loss of consortium and cannot maintain any of the previously discussed tort claims in his own

13

name.  (Id. at 3-4.)  I have recommended that the Court dismiss Count I in its entirety, the intrusion into seclusion theory of Count V and all of Plaintiff Trott's claims under Count V, but not Hagerman's false light publicity claim under Count V.  I have also recommended that the Court not dismiss Hagerman's or Trott's claims leveled in Counts VI and VII.  Because Trott's loss of consortium claim is a derivative claim, Brown v. Crown Equip. Corp., 2008 ME 186, ¶ 23, 960 A.2d 1188, it is subject to all of the same rules and defenses as Hagerman's related claims and cannot go forward unless one or more of his spouse's independent tort claims is viable.  Because I have recommended that Hagerman's emotional distress claims and false light publicity claim not be dismissed in connection with the pending motion, I also recommend that the Court not dismiss Trott's loss of consortium claim, either.  Aubuchon's argument that Trott may not pursue any of the underlying tort claims in his own name is based on an assertion that Trott lacks "standing" because he has not asserted an "injury in fact."  (Mot. at 3.)  This limited argument is insufficient to resolve the question of whether there is a duty related to infliction of emotional distress that runs to a spouse under the circumstances alleged in the pleadings.  There could, of course, be intentional conduct so outrageous that psychic injury to an individual would be foreseeable, even though the conduct was primarily directed toward another.  Because Aubuchon has not argued in its motion that its conduct was not so outrageous, this is not the occasion to address that question.

## Conclusion

For the reasons set forth above, I RECOMMEND that the Court GRANT, IN PART, Defendant's Motion to Dismiss (Doc. 4), and dismiss Count I in its entirety, Trott's entire claim under Count V, and that portion Hagerman's claim under Count V that alleges intrusion upon marital seclusion.  In all other respects, the Motion should be denied.

14

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

May 13, 2009

15